IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2004 Session

## DR. KENNETH F. FREELS, KENNETH F. FREELS, D.D.S., P.C., and KENNETH F. FREELS, D.D.S., P.C., DEFINED BENEFIT PENSION TRUST, v. JOSEPH C. TAYLOR & ASSOCIATES, INC., and HOWARD G. HOGAN, SUCCESSOR RECEIVER FOR JOSEPH C. TAYLOR & ASSOCIATES, INC.

Direct Appeal from the Chancery Court for Knox County
No. 128368-1     Hon. Daryl R. Fansler, Chancellor

FILED MAY 26, 2004

No. E2003-01788-COA-R3-CV

Plaintiffs sought recovery of cashier's check on theory of bailment or resulting or constructive trust. From an adverse Judgment by the Chancellor, plaintiffs appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., E.S., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SP., J., joined.

Robert S. Stone, Knoxville, Tennessee, for Appellants.

James R. Moore, Knoxville, Tennessee, for Appellees.

## OPINION

The dispositive issue in this action is the ownership of a $50,000.00 cashier's check, which was made out to "Joe Taylor and Assoc." by plaintiff Freels.

The check was found in the automobile of Joseph C. Taylor, a Knoxville businessman, after he committed suicide in November, 1995. According to the Complaint, the check was given to Taylor by plaintiff, Dr. Kenneth Freels, for the purchase of stock options as a part of a pension plan Freels had established for his employees. The check was made out as Taylor directed

which was consistent with the parties' past transactions. The check was delivered by Freels to Taylor for the purpose of purchasing stock options and the Complaint further alleged that the check was in the possession of the Knoxville Police Department.

Ultimately, all defendants were dismissed except Joseph C. Taylor & Associates, and its receiver after the check was delivered to the Clerk of the Court.

Plaintiffs filed a Motion for Partial Summary Judgment, stating that the check was delivered to Taylor the day before he died and was never endorsed, negotiated or co-mingled. Thus, plaintiffs' claim there was a resulting or constructive trust created for plaintiffs' benefit, or alternatively, there was a bailment.

Freels filed an affidavit stating that he was a dentist in Kingsport, Tennessee, and that the Freels Trust was a pension trust organized for the benefit of his employees. Freels stated that Joseph Taylor had made investments for Freels' trust and purchased securities for the same. Freels stated that he and his wife first met Taylor in 1982 and had an ongoing relationship regarding investments and financial planning, and that he had complete trust and confidence in Taylor and invested with him exclusively.

Freels attached two exhibits to his affidavit, showing the transaction he had made with Taylor, and further stated that Taylor contacted him just prior to November 2, 1995 and told him that he had stock options available for Freels to invest and that Freels purchased the Cashier's check at issue and delivered the same to Taylor to purchase stock options for the Freels Trust, but that Taylor died the next day without ever endorsing or negotiating the check.

The receiver for Joseph C. Taylor & Associates filed a Response, stating that Taylor was involved in a "ponzi" scheme, wherein he used the money for certain clients to "pay off" the investment returns of other clients. The receiver stated that Freels was involved in this scheme, and that on two occasions received incredible returns for a very short term investment. The receiver said that Freels was no differently situated than any of Taylor's many other clients who had been similarly defrauded and that plaintiffs had no right to reclaim the cashier's check because, in this jurisdiction, cashier's checks are treated as cash. The receiver concluded that plaintiff should be treated just like every other creditor of Taylor & Associates, and receive a pro rata share of the bankruptcy estate.

The receiver also filed an affidavit of William Hendon who stated that he was a retired FBI agent who was now a bankruptcy trustee, and that he had investigated the dealings of Taylor & Associates and found no legitimate investments.

Subsequently, the Court issued a Memorandum Opinion and Order and held that plaintiffs' claim of bailment sounded in contract law, and thus, if a bailment was created, plaintiffs would be in no different position than any other creditor of the bankruptcy estate. The Court also found that equity required that the plaintiffs' claim be satisfied pro rata along with the other creditors similarly situated, and that plaintiffs were not entitled to the return of the cashier's check. At the

behest of the plaintiffs, the Court's Judgment was made final pursuant to Tenn. R. App. P., rule 54.02, and this appeal ensued.

Plaintiffs present four issues which advance theories of bailment and resulting or constructive trust which entitled the return of the cashier's check.

The Supreme Court has recognized that "cashier's checks are commonly perceived and circulated in the commercial world as cash." *Stringfellow v. First American National Bank*, 878 S.W.2d 940 (Tenn. 1994). The Court has thus declared that in Tennessee, cashier's checks are to be treated as a cash equivalent, and that an issuing bank has no right to refuse to pay same when presented. *Id.*

In jurisdictions which follow the cash equivalent approach to cashier's checks, it has been said that "until delivery of the cashier's check to the named payee, the purchaser remains the 'owner' and retains the right to cancel" but "the delivery of the cashier's check to [a payee] had the same effect as a delivery of the cash itself which it represented." *Mutual Savings and Loan v. National Bank of Detroit*, 462 N.W.2d 797 (Mich. Ct. App. 1990); *Pikeville Nat. Bank & Trust Co. v. Shirley*, 135 S.W.2d 426 (Ky. Ct. App. 1940). Applying these principles to this case, delivery of the cashier's check by Freels to Taylor was tantamount to Freels giving Taylor cash. Thus, the existence of a cashier's check given to Taylor by Freels affords plaintiffs no superior right to the return of the cashier's check than they would have if cash had been found in Taylor's possession.

Plaintiffs argue that the check should be returned to them pursuant to either a resulting or constructive trust theory, since the check was given to Taylor to invest for the benefit of the Freels trust. This argument ignores the fact that basically all assets received by Taylor & Associates were held in this same manner. Plaintiffs' argument also ignores the basic tenets of the bankruptcy code, which provides that "all legal or equitable interests of the debtor in property" are to be made a part of the bankruptcy estate to be distributed by the bankruptcy court. 11 U.S.C. §541. This provision is broadly construed, such that it would extend to all property wherever located and by whomever held, and would include all of the debtor's legal, equitable, and possessory interests. *See Matter of Continental Airlines, Inc.*, 134 B.R. 536 (Bankr. D. Del. 1991). As such, there can be no question that cash or a cashier's check in the possession of Taylor at the time of his death would be included in the bankruptcy estate for disposition by the bankruptcy court. (Similarly, this claim seeking return of property included in the bankruptcy estate would arguably be subject to the automatic stay provisions in the bankruptcy code, found at 11 U.S.C. §362(a).)

Some cases have recognized the existence of a constructive trust in certain funds held by a bankruptcy debtor. However, it is clear that in these cases it is the bankruptcy court which properly decided the outcome of this issue by looking to state law. *See, e.g., In re Wrinkle*, 128 B.R. 529 (Bankr. S. D. Ohio 1991); *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir. 1985); *In re Fox*, 5 B.R. 317 (Bankr. N. D. Tex. 1980). By applying State law, it was proper for the Trial Court to rule that plaintiffs were similarly situated to the other creditors of Joseph C. Taylor & Associates, and thus plaintiffs should assert their claims in the bankruptcy proceeding and receive

their proper pro rata share.

Plaintiffs concede in their brief that resulting and constructive trusts are judicial creations basically found to exist as an equitable remedy to prevent unjust enrichment. In this case, the Trial Court found that equity would not be served by imposing a trust on these funds for plaintiffs' benefit, because, as the Chancellor said:

> In accordance with the equitable maxim "equity delights in equality", a court of Chancery will divide a common fund equally between those entitled, and if the fund is not sufficient to pay all in full, a pro rate distribution will be ordered. *Gibson's Suits in Chancery* §23, 7th Edition.

We conclude that the Chancellor resolved the competing equities in the appropriate manner.

Finally, plaintiffs' claim regarding a bailment is without merit. Plaintiffs concede that a bailment sounds in contract and thus would not put plaintiffs in any greater position than any other creditor with a contractual claim, as the Trial Court found.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Dr. Kenneth F. Freels.

_____
HERSCHEL PICKENS FRANKS, P.J. E.S.

-4-