In re Brian Albert CROSS, Debtor.

Rosemarie CROSS, Plaintiff,

v.

Brian Albert CROSS, Defendant.

Bankruptcy No. .93–30785.
Adv. No. 94–7034.

United States Bankruptcy Court,
D. North Dakota.

Sept. 15, 1994.

Ross Espeseth, Bismarck, ND, for plaintiff.

Dean A. Rindy, Fargo, ND, for debtor/defendant.

## MEMORANDUM & ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The plaintiff commenced the above-entitled adversary proceeding by Complaint filed on June 6, 1994, seeking to have obligations stemming from a state court divorce decree as well as expenses associated with its enforcement declared nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The matter directly before the court arises by a motion for summary judgment filed by the plaintiff-creditor, Rosemarie Cross (Rosemarie), on August 8, 1994, wherein it is asserted that obligations consisting of child support arrearages, marital indebtedness, medical expenses, and enforcement expenses such as attorney's fees and transportation costs are actually in the nature of support. The defendant-debtor, Brian Albert Cross (Brian), challenges the characterization of most of the obligations as support and maintains that a genuine issue of material fact exists which precludes the entry of summary judgment.

### FACTUAL BACKGROUND

Brian Albert Cross filed for relief under Chapter 7 of the United States Bankruptcy Code on September 7, 1993. At the time of the bankruptcy filing, divorce proceedings between Brian and Rosemarie Cross were pending in the Jefferson County District Court of Colorado. On or about September 9, 1993, Brian and Rosemarie were divorced by an order of the Colorado court. The Colorado court entered a number of orders and made specific findings, both pre- and postpetition, with respect to the payment of child support, medical expenses for the children of the marriage, marital indebtedness, and enforcement expenses such as transportation costs and attorney's fees. This court had the benefit of reviewing various orders from the Colorado court, affidavits from the parties to this action, an affidavit from the attorney who represented Rosemarie in the original divorce proceedings, and a transcript from one of the state court hearings.

Brian concedes the nature and the dischargeability of outstanding obligations stemming from child support arrearages and medical expenses incurred for the care of the children of the marriage. Consequently, he has continued to make payments toward the satisfaction of those support obligations postpetition. The outstanding child support arrearages and unpaid medical expenses are $2,877.25 and $99.96 respectively.

On January 14, 1994, the state court held a contempt review hearing. Cognizant of the bankruptcy filing, the presiding magistrate made a specific finding that the obligations for the marital indebtedness and enforcement expenses, comprising of transportation costs and attorney's fees, were *"in the nature of support and directly connected to support"* and entered an order to that effect on January 25, 1994. *See* Order From January 14, 1994 Contempt Review Hearing (entered on January 25, 1994). The plain and unequivocal intent of divorce court can be clearly gleaned from the contemporaneous recitation of the presiding magistrate:

> THE COURT: I will make a finding today that the attorney's fees, the marital debt, the travel expenses were in the nature of a support order and directly connected to support. That would be my finding. So that you can take that finding, if you want, to the bankruptcy court, and the bankruptcy court is going to have to determine whether or not those debts were discharged.
>
> COUNSEL FOR BRIAN: And that's fine. My only real thought on this, Your Honor, and the—you know, I'm very comfortable with the Court's ruling, is that under Rule 107 is this really a contempt matter. Has he wilfully [sic] disobeyed a court order when he's been discharged, or is it really a matter of, you know, a motion to determine his chargeability [sic] of these debts.
>
> THE COURT: And that's why I'm going to let the bankruptcy court determine that.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> COUNSEL FOR ROSEMARIE: But it is correct that the Court is making a finding that the attorney's fees from the last contempt, the transportation costs, and the marital debt is in the nature of support and directly connected to support; is that correct?

THE COURT: That's correct. And if you want to draft an order, I'll sign it.

*See* Clerk's Transcript of January 14, 1994 Hearing (Excerpt). The marital indebtedness outstanding as of the petition date was $13,367.44. The transportation costs and attorney's fees were $1,093.00 and $625.00 respectively.

Despite the unambiguous state court ruling, Brian asserts that the marital indebtedness as well as the transportation costs and attorney's fees are not properly characterized as support but, rather, are dischargeable obligations. He further contends that summary judgment is inappropriate in this case since an evidentiary hearing is required to determine the true nature of the award.

## CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure governs the grants of summary judgment motions and is made applicable to bankruptcy proceedings by Rule 7056 of the Bankruptcy Rules. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The statutory exceptions to discharge embodied in § 523(a) of the United States Bankruptcy Code have been narrowly confined to those select areas in which Congress evidently concluded that the creditor's interest in recovering full payment of its obligation outweighs the debtor's interest in a complete fresh start. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Section 523(a)(5) thus represents a departure from the general policy of absolution, frequently expressed as a "fresh start", in order to ' "enforce an overriding public policy favoring the enforcement of familial obligations." ' *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 721 (10th Cir.1993) (quoting *Shaver v. Shaver,* 736 F.2d 1314, 1315–16 (9th Cir.1984)). *See*

*Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904) ("Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate ·debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the [parent] to ... maintain and educate his [or her] children."). Furthermore, the burden falls upon the shoulders of the objecting creditor to prove by a fair preponderance of the evidence that a particular obligation is nondischargeable. *Grogan,* 498 U.S. at 291, 111 S.Ct. at 661.

■ 11 U.S.C. § 523(a)(5) excepts from discharge any debt owed to a former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child when awarded in connection with a "divorce decree or other order of record" provided that the obligation is "actually in the nature of *support*". 11 U.S.C. § 523(a)(5) (emphasis added).[1] In ascertaining whether a particular debt is actually in the nature of a nondischargeable "support" obligation or more properly represents a dischargeable property distribution or settlement, it is universally agreed that the critical inquiry is the function the particular award was intended to serve at the time it was made. *Adams v. Zentz,* 963 F.2d 197, 200 (8th Cir.1992); *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir.1983). An obligation to pay marital indebtedness can be properly classified as support. *See Sadowsky v. Larson (In re Larson),* 169 B.R. 945 (Bankr. D.N.D.1994). *See also Williams,* 703 F.2d at 1067 (opining that an obligation "by one spouse to pay the other's debts, including a debt to a lawyer for fees, can be 'support' for bankruptcy purposes."). Similarly, costs and attorney's fees connected with the enforcement of a support order can readily be found to be actually in the nature of support. *See, e.g., Jones v. Jones (In re Jones),* 9 F.3d 878 (10th Cir.1993); *Lathouwers v. Lathouwers (In re Lathouwers),* 54 B.R. 205, 206 (Bankr. D.Colo.1985); *Anderson v. Barth (In re Barth),* 37 B.R. 357, 358 (Bankr.D.N.D.

---

1. It is significant to note that the bankruptcy court exercises concurrent jurisdiction with the state court in determining whether a particular

obligation is support. *Bereziak v. Bereziak (In re Bereziak),* 160 B.R. 533, 535 (E.D.Pa.1993). *See* 11 U.S.C. § 523(c)(1).

1984); *Rose v. Gedeon* (*In re Gedeon*), 31 B.R. 942, 943 (Bankr.D.Colo.1983); *Nelson v. Mineer* (*In re Mineer*), 11 B.R. 663, 665–66 (Bankr.D.Colo.1981).

■ In order to assess the function a particular award was intended to serve at the time it was made, bankruptcy courts generally look beyond the four corners of the divorce decree to all the circumstances surrounding the creation of the liability. Courts are frequently required to conduct an evidentiary proceeding and hear extrinsic evidence. A multi-factored analysis is often employed to assist a court in determining the true nature of the award or the intent of the state court in fashioning the particular award. *See, e.g., Streich v. Osterberg* (*In re Osterberg*), 109 B.R. 938, 941–42 (Bankr.D.N.D.1990). However, in circumstances in which the intent of the divorce court is so completely unambiguous (as in the case at bar) that the actual nature of the award can be readily ascertained, it becomes unnecessary to engage in a strict factors analysis. *Sadowsky v. Larson* (*In re Larson*), 169 B.R. 945 (Bankr. D.N.D.1994) (granting summary judgment); *McConnell v. McConnell* (*In re McConnell*), 88 B.R. 218, 221 (Bankr.D.N.D.1988); *Seablom v. Seablom* (*In re Seablom*), 45 B.R. 445, 450 (Bankr.D.N.D.1984); *Hillius v. Hillius* (*In re Hillius Farms*), 38 B.R. 334, 336 (Bankr.D.N.D.1984); *Norman v. Norman* (*In re Norman*), 13 B.R. 894, 899 (Bankr. W.D.Mo.1981). Any other rule would effectively turn a bankruptcy court into a court of domestic relations and inevitably force an unnecessary rehash, often years later, of the very same evidence that the state court carefully weighed when balancing the equities of the case and the respective needs and abilities of the parties to the dissolution proceeding. This court will not supplant the judgment of a divorce court and substitute its own especially when, as in this case, the intent of the presiding magistrate in making the award is so abundantly clear.

■ The unmistakable intent of the state court, although succinctly set forth in its order which specifically designated the disputed obligations as in the nature of support, can be clearly gleaned from an examination the transcript of the state court hearing.

The factual issues relative to the nature of the obligations were directly before the state court who was cognizant of the bankruptcy proceeding. It would take a severely strained reading of the court's recitation of its findings to conclude that the obligations for attorney's fees, transportation costs, and marital indebtedness were intended to serve as anything other than a support function.

Accordingly, it is **HEREBY ORDERED** that the plaintiff's motion for summary judgment is in all things **GRANTED,** and that judgment be entered in favor of the plaintiff-creditor, Rosemarie Cross, and against the defendant-debtor, Brian Albert Cross, in the amount of $18,062.65, said sum representing a nondischargeable support obligation under 11 U.S.C. § 523(a)(5).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**